YELVERTON, Judge.
Convicted by a jury of aggravated rape, LSA-R.S. 14:42, defendant, Michael R. Freeman, was sentenced to life imprisonment at hard labor without the benefit of parole, and he appeals the conviction on the basis of four assignments of error, contending (1) he was denied his right to arraignment, (2) co-counsel was appointed on the day of trial, too late to prepare, (3) the trial jury was selected two weeks before trial, and (4) there was an insufficiency of evidence to support a conviction. Finding no merit to any assignment of error, we affirm the conviction.
FACTS
On June 18, 1982, the victim, Susan K. Backmeier, was living with her boyfriend, Robert Bates, at their residence on Highway 104, just outside of the city of Opelou-sas. Early that morning, after Miss Back-meier’s boyfriend had left for work, she heard a knock on the door. She answered the door, still dressed in her robe and pajamas. There stood the defendant, who told Miss Backmeier that a friend of theirs named Steve was in jail, and they needed to go bail him out. Miss Backmeier went to the bedroom to change. She shut the bedroom door behind her.
After she was fully dressed, wearing a terry cloth top and blue jeans, Miss Back-meier opened the door of the bedroom. The defendant, then naked, walked in, forced her onto the bed, and ripped her clothes off, tearing her leather belt in two at the buckle.
He then straddled her on the bed, pinning down her arms. He grabbed her by the hair of her head and forced her to have oral sex. Next, he grabbed her by the throat and started to strangle her, telling her that if she did not shut up, it would get worse. The victim stated that she fought with the defendant as best she could. The assault lasted about half an hour.
After the assault, the defendant asked Miss Backmeier where her boyfriend’s gun was, telling her not to worry because he only wanted to kill himself. She escaped and ran to a neighbor’s house. When the police arrived and ordered him out of the house, the defendant repeatedly told the two officers to go ahead and shoot him. The officers finally subdued him and transported him to the sheriff’s office.
ASSIGNMENT OF ERROR NO. 1
The record shows that at his first appearance in court following the indictment defendant was called up for arraignment, but he requested that the arraignment be postponed. It was, and thereafter defendant was never formally arraigned.
The defendant contends that his failure to plead invalidates the entire proceeding. This argument is without merit. La.C. Cr.P. art. 555 states:
“Art. 555. Waivers
“Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.”
This article was applied in State v. Sears, 298 So.2d 814 (La.1974), where the Louisiana Supreme Court stated:
*498 “It is true that a defendant has a right to be arraigned. C.Cr.P. 551. However, where a defendant enters upon trial without objecting to the defect, he is deemed to have waived his right under C.Cr.P. Art. 555....
“Moreover, the defendant does not contend nor show that any prejudice resulted from the entering of the plea of not guilty. Cf. State v. Franks, 284 So.2d 584 (La.1973).”
In the present case, the defendant was not formally arraigned and did not plead. The minutes reflect several appearances before trial.
On October 25, 1983, the defendant went to trial without objecting to the absence of an arraignment. As a result, the defendant was considered to have entered a plea of not guilty. La.C.Cr.P. Art. 555. Without a showing of prejudice, any irregularity in the arraignment procedure is waived. State v. Sears, supra, at 817. No prejudice has been shown.
Consequently, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
The defendant contends that the court’s appointment of co-counsel on the date of his trial denied him his federal and state constitutional right to have sufficient time to prepare his defense.
He cites the case of State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945), as authority for the assertion that appointment of co-counsel on the day of trial denies a defendant a reasonable opportunity to prepare a defense. Dorsey does not stand for that proposition. Instead, Dorsey held that it was reversible error to deny the defendant the right to see, read, and copy an alleged written confession on the day before trial. Dorsey is inapplicable to the present case.
The record does not reflect when or why a co-counsel was appointed, or when or why co-counsel was replaced. Assuming the correctness of defendant’s brief that a co-counsel had been appointed by the court, and that he was replaced by another co-counsel on the day of trial, the fact remains that defendant’s lead counsel, Patterson F. Willis, had been on the case for several months and that it was he who actually selected the jury, tried the case, and gave the closing argument. Defendant has demonstrated no prejudice resulting from the mere replacement of co-counsel in the case. Defendant’s lead counsel, Willis, represented him through pretrial procedures and was present with him throughout the entire trial. At all stages the defendant was represented by an attorney who had adequate time to prepare a defense.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
The defendant contends that because the jury was selected approximately two weeks before trial, and then sent home to await trial, there arose a potentially prejudicial exposure of the jury to improper influence. However, defendant has not demonstrated any actual resulting prejudice. Therefore, all that we can examine is whether this procedure was somehow illegal.
A jury is required to be sequestered only in capital offenses. La.C.Cr.P. Art. 791. In the instant case, the defendant was charged with aggravated rape, a noncapital offense. As a result, the court was not mandatorily bound to sequester the jury after it was selected.
In the recent case of State v. Gallow, 452 So.2d 1288 (La.App. 3rd Cir.1984), this court stated that in order to properly preserve the court’s decision not to sequester jurors as an assignment of error, the record must reflect that the defendant moved for sequestration or objected to the procedure during voir dire.
Furthermore, even where a defendant does move for sequestration, the trial judge in his discretion may deny such motion both as to prospective jurors or selected jurors. State v. McAllister, 253 La. 382, 218 So.2d 305 (1969).
*499 In the present case, the record reflects that the defendant never moved for sequestration or made any objections during voir dire concerning the selection of the jury at that time. As a result, the defendant has not properly preserved this assignment of error.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 4
The defendant contends that the State did not show beyond a reasonable doubt that the defendant committed the crime of aggravated rape. Specifically, the defendant contends that the evidence presented by the State was not sufficient to prove sexual intercourse was committed without the victim’s lawful consent, a necessary element of the crime of rape. La.R.S. 14:41.
The standard of review as to the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt proof of each element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The Louisiana Supreme Court has held that the testimony of the victim and the investigating officer in a rape case is sufficient to convince a reasonable factfinder beyond a reasonable doubt of defendant’s guilt. State v. Rives, 407 So.2d 1195 (La.1981). In the present case, there was the testimony of the victim, the investigating officer, a nurse, and a doctor. There was also various scientific evidence contained in a sex crime kit which was examined by the Aeadiana Criminalistics Laboratory.
The victim testified that the defendant rode up to her house on a friend’s motorcycle. At the front door, he told her that their friend Steve was in jail and that they needed to bail him out. She was wearing pajamas and a robe when she first answered the door. After talking to the defendant, she returned to her bedroom and shut the door. After she was fully dressed, wearing a red terry cloth top and blue jeans, she walked out of the bedroom. She came face to face with defendant standing-in the door with no clothes on. Miss Back-meier then testified that the defendant pushed her back into the room, proceeded to force her onto the bed and ripped off her clothes, tearing her leather belt in two at the buckle. He straddled her on the bed, pinned her arms down, and hit her repeatedly, while forcing her to engage in oral sex. The defendant then put his hands on her throat and proceeded to strangle her, telling her that if she did not shut up, he would hurt her worse. She then testified that she fought with him the best she could. She said that the defendant penetrated her sexually and that the whole episode lasted approximately a half hour. Miss Backmeier also stated that the defendant asked her to tell him where the gun was and said "... all I want to do is kill myself.”
William Schumacher, a doctor, testified that he treated Miss Backmeier in the emergency room at Opelousas General Hospital immediately following the rape. Schumacher testified that she was very upset and crying. He had to stop the examination several times because she was so upset. Dr. Schumacher also recalled that Miss Backmeier had a bruise on her right cheek and a hemorrhage below the eye. He took swabbings of her vagina and placed them in a rape kit which was turned over to the sheriff’s department.
Karen Reynolds, a nurse, also testified that on June 18, 1982, she saw Miss Back-meier as a patient. Miss Reynolds testified she was present in the emergency room during the examination by Dr. Schumacher. Miss Reynolds recalled that Miss Backmeier had a bruise on one hip, a bruise on one arm, a linear mark on one side of her face, a hemorrhage in one eye, and what appeared to be a hemorrhage or red spot in the other eye. Miss Reynolds also testified she was present at the collection of the samples.
This testimony from the victim, the doctor who examined her, and the nurse *500 present in the emergency room when she was examined, support the finding, that Miss Backmeier did not consent to have sexual intercourse with the defendant, but was prevented from resisting by force and threats of great and immediate bodily harm.
Pat Woodham, a neighbor who lived up the road from Miss Backmeier, also testified at the trial. Mrs. Woodham said that she was at home with her sons when they heard a noise. One of her sons said, “Momma, it’s Sue”, and then Miss Back-meier ran into their house. Mrs. Woodham testified that Miss Backmeier then told her that one of Bobby’s friends had raped her. Mrs. Woodham said she called the police. She testified that Miss Backmeier was shaking all over, and that the victim said her chest and arms were hurting because the defendant had put his knees on them during the rape. Miss Backmeier also told her that she was sick to her stomach. Mrs. Woodham accompanied Miss Backmeier to the police station.
Benny Ardoin, a detective in the sheriff’s office at St. Landry Parish, testified that he and Deputy Sheriff Calvin Moore responded to a call concerning an alleged rape at the residence of Susan-Backmeier. When they arrived at the residence, they got out of the car and ordered the person inside the house to come out. After no initial response, the defendant eventually came out of the house without a shirt or shoes on. He was wearing only his jeans. The defendant refused to put up his hands and repeatedly told the officers to “just go ahead and shoot me, go ahead and shoot me ...”
The officers subdued the defendant and later transported him to the sheriff’s office. They then returned to the house and picked up the rifle and Miss Backmeier’s clothing. Ardoin testified that they found a belt that had been broken off at the buckle.
Kenneth Ray Cockerharm, a forensic chemist at the Aeadiana Criminalistic Laboratory in New Iberia testified that the laboratory received three items, including a sex crime kit under the name of a suspect in a criminal case, Ray Freeman. This kit contained a vaginal smear slide which contained numerous sperm.
In summary, the evidence presented shows that the defendant engaged in acts of sexual intercourse with Miss Back-meier without her consent. During this assault, Miss Backmeier was prevented from resisting by the use of force as she was pinned down and strangled by the defendant. The defendant also threatened to inflict great bodily harm, grabbing her by the throat and telling her he would hurt her worse if she did not shut up.
Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the crime of aggravated rape.
This assignment of error has no merit.
For these reasons, the conviction is affirmed.
AFFIRMED.