640 So.2d 561 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
George William MOORE, Defendant-Appellant.
No. CR 93-1632.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*562 Morgan J. Goudeau, III, Opelousas, for State.
William Tracy Barstow, David Randal Wagley, Opelousas, for George William Moore.
Before LABORDE, KNOLL and WOODARD, JJ.
LABORDE, Judge.
Defendant appeals his conviction for attempted manslaughter, a violation of LSA-R.S. 14:27 and 14:31. After a review of the record, we find no reversible error and affirm defendant's conviction and sentence.

FACTS
On January 20, 1992, Opelousas Police Chief Larry Caillier and Officers Perry Gallow, Dwain Grimmett and Wilson Thomas proceeded to 959 Jefferson Street, the residence of Jesse Isaac, pursuant to information obtained through a confidential informant, to question those at the residence about reported drug activities.
When the police arrived, Douglas Barrow and defendant George Moore were standing outside, next to Barrow's Chevrolet Blazer, which was parked in the driveway near the carport. Isaac and Alfred Barrow were in their respective cars backing out of the driveway.
*563 As the officers emerged from their vehicle and approached the house, gun fire was exchanged. None of the officers were hit, but a 9 mm bullet was recovered just behind the area where the officers were standing during the exchange. It was identified as having been fired by defendant's 9 mm pistol.
On March 24, 1992, defendant was charged by Bill of Information with attempted first degree murder, a violation of La.R.S. 14:27 and 14:30 A(1) and (2). On April 10, 1992, a new Bill of Information was filed charging the defendant with attempted first degree murder, a violation of R.S. 14:27 and 14:30 A(2). The latter bill was amended on January 28, 1993 to add 14:30 A(6).
After a jury trial, defendant was found guilty of attempted manslaughter. Defendant appeals his conviction, alleging four assignments of error:

ASSIGNMENT OF ERROR NO. 1: The Trial Court erred in overruling defendant's pre-trial objections concerning the nonspecificity and multiple charges contained in the Bill of Information.

ASSIGNMENT OF ERROR NO. 2: The Trial Court erred in forcing the defendant to accept, on the basis of the State's reverse "Batson" objection, jurors he desired to excuse.

ASSIGNMENT OF ERROR NO. 3: The Trial Court erred in failing to give the defendant's Proposed Special Jury Instructions and in giving an instruction on "Flight".

ASSIGNMENT OF ERROR NO. 4: Considering the evidence in a light most favorable to the prosecution, the trier of fact could not have, beyond a reasonable doubt, found the defendant guilty, especially in light of the fact that the defendant was responding to a perceived threat of great bodily injury, and therefore the verdict is contrary to the law and evidence.

ERRORS PATENT
After a review of the record in accordance with C.Cr.P. art. 920, we find two errors patent.
First, defendant received an illegal sentence. Defendant was sentenced to serve ten years at hard labor without benefit of parole, probation or suspension of sentence to run concurrent with any sentence he might be serving in Texas.
The applicable sentencing provision for attempt in this case is La.R.S. 14:27(D)(3) which provides that:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. Amended by Acts 1970, No. 471, § 1; Acts 1975, No. 132, § 1; Acts 1989, No. 609, § 1.

The sentencing provision for manslaughter in effect at the time of this incident was contained in La.R.S. 14:31(B) and provided:
B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years. However, if the victim was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than two nor more than twenty-one years. Amended by Acts 1973, No. 127, § 1; Acts 1991, No. 864, § 1.

Reading these two provisions together, it becomes evident that the defendant was to be sentenced to not more than ten and one-half years to be served with benefit of probation, parole or suspension of sentence. An illegal sentence is one not "authorized or directed by law." State v. Johnson, 220 La. 64, 55 So.2d 782 (1951). The sentence imposed in the present case is outside the statutory provision since it provided that defendant should serve his sentence without benefit of parole, probation or suspension of sentence.
C.Cr.P. art. 882 provides:
A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

*564 B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition.
C. Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, to the writ of habeas corpus. Amended by Acts 1984, No. 587, § 1.

Thus, we will strike the illegal portion of defendant's sentence, which requires him to serve his sentence without benefit of parole, probation or suspension of sentence.
Next, C.Cr.P. art 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, defendant's sentence shall be amended to reflect that defendant is given credit for time served prior to the execution of sentence. See La.C.Cr.P. art 882 A. Resentencing is not required. Rather, this case shall be remanded and the district court ordered to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1 Cir.1992).

ASSIGNMENT OF ERROR NUMBER ONE
Defendant alleges that the trial court erred in overruling his pretrial objections concerning the non-specificity and multiple charges contained in the Bill of Information. Defendant was charged by the amended Bill of Information with violation of La.R.S. 14:27 and 14:30(A)(2) and (A)(6) in that "he attempted to commit first degree murder of a police officer while they engaged in the performance of their lawful duties, while he engaged in a drug transaction." Defendant argues that since more than one charge was included in this Bill of Information, C.Cr.P. art. 493 required they be charged in a separate count for each. Additionally, defendant argues that the Bill of Information allowed the introduction of otherwise inadmissible "other crimes" evidence in an attempt to prejudice the jury and make the defendant out to be a "bad guy."
C.Cr.P. art. 495 provides that objections of misjoinder of offenses may be urged only by a motion to quash the indictment. Additionally, C.Cr.P. art. 536 requires that a motion to quash be in writing. The objection to the bill of indictment was made orally in open court and thus was not properly before the trial court.
Further, C.Cr.P. art. 480 provides:
If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, or with one or more of several results, two or more of such acts, means, intents, or results may be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.
Defendant was charged with attempted first degree murder under La.R.S. 14:30(A)(1) and (A)(6), which provide respectively:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
* * * * * *
(6) When the offender has the specific intent to kill or to inflict great bodily harm while engaged in the distribution, exchange, sale, or purchase, or any attempt thereof, of a controlled dangerous substance listed in Schedules I, II, III, IV, or V of the Uniform Controlled Dangerous Substances Law.
Pursuant to C.Cr.P. art. 480, the conjunctive charge in the single count was proper and not an attempt to allow the presentation of *565 otherwise inadmissible "other crimes" evidence. We find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant alleges that the trial court erred in forcing him to accept, on the basis of the state's reverse "Batson" objection, jurors he desired to exclude. The two jurors that defendant sought to exclude were number 281, D.L. Vidrine, and number 298, Joseph J. Zerangue. It was the state's contention that defense counsel wanted to exclude these jurors because they were white. The defense argued that his reason for wanting to exclude these jurors was due to their age.
C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. As the record does not reflect that defense counsel objected to the re-impanelling of jurors Vidrine and Zerangue, defense counsel did not properly preserve this issue for review.
Moreover, we note that the outcome would be not different even if we were to review this issue. It appears that the trial court believed that the defense was attempting to impanel as many young black males as possible, after giving defendant an opportunity to enter a race neutral reason for entering these peremptory challenges. Defendant failed to do so convincingly.
In State v. Knox, 609 So.2d 803 (La.1992), the Supreme Court held that a criminal defendant may not engage in purposeful discrimination on the ground of race in the exercise of peremptory challenges. The Court stated:
In the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges.
Id. at 806, citing Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).
No transcript of objections during the voir dire proceedings is included in the record. However, after the jurors were sworn in, the judge presiding over the trial heard the opposing viewpoints of counsel:
BY THE COURT: In this case, Mr. Wagley, defense counsel, excluded from the fourth panel, jurors # 298, Joseph J. Zerangue and # 281, D.L. Vidrine. The state objected on the grounds that they were excluded simply on the grounds of race. It was the opinion of the Court that the challenge was not race and defense counsel gave no valid reason in my opinion for excluding those jurors. It appears in the jury selection that counsel for defense was trying to impanel as many young black males as possible on the jury.
MR. WAGLEY: The reason I excluded those jurors was due to their age.
MR. RICHARD: The state takes the position that defendant through its counsel, engaged in a pattern of exclusion of jurors solely because of their race. The first panel called for were four black individuals and two white individuals, juror # 6, Catherine Ardoin, and # 206, Trishia L. Olivier, both of whom were excluded by the defense. In the second panel, after the court excluded James Franks # 97, for cause as a Deputy Sheriff, that left on the jury, one white person, Christopher J. Higginbotham # 127, and Andrus J. Cormier, # 57. The state excused # 127 the defense excused Andrus J. Cormier, # 57. The state also excluded Jo Ann Z. Pickney # 209. The [sic] The prospective juror wore sunglasses the entire time and as to the third panel, there were four white persons and two blacks on that panel, Christopher Pitre, # 212 was accepted. He was white. The state excluded Shirley Jones, # 143 because defense counsel, Mr. Wagley, had been her son's counsel in a criminal case and she indicated the charges were dropped as a result of Mr. Wagley's efforts. # 138 Trent Jenkins was dismissed by the state as being an unmarried male under the age of 28, as had been Christopher Higginbotham, who was white. The defense challenged Wanda Inhern, # 135, Clinton J. Fruge, # 101, and # 233, Barbara Ann Richter, all of whom were white. As to the fourth panel, it consisted of four whites and two blacks; Joseph H. *566 Hills, # 128 was accepted by both the state and defense. The other black venireman Theresa Moton, # 198, was excluded by the state as her brother and first cousin had been prosecuted by our office for the crimes of rape and theft. The defense sought to exclude Joseph Zerangue, # 298, Donna M. Speyrer Richard, # 255, and D.L. Vidrine, # 281. The state had previously objected to the exclusion of Ms. Inhern Mr. Fruge and Ms. Richter. Upon the filing of the exclusion of these three, the state once again reiterates that the defense was engaged in a pattern of race discrimination. The Court had originally overruled the defense's exclusion of Zerangue, Richard and Vidrine but upon additional explanation as to # 255, Donna Speyrer Richard, wherein Mrs. Richard said she had been in a class of or with Chief Callier, the Court allowed the exclusion of Mrs. Richard.
MR. WAGLEY: In panel I, Catherine Ardoin, # 6 said her mother was the victim of a violent crime which resulted in her death. # 206, Trishia Olivier has a cousin who is a dispatcher with the police department; 2nd panel, # 57, Andrus J. Cormier, Sr., worked with Det. Grimmett 18 years ago, 3rd panel, Clinton Fruge # 101 had problems, either in understanding or communicating wherein he could put his opinion aside and follow the law, and while he was saying that I noticed Mrs. Inhern # 135 and Mrs. Richter # 203 nod their heads.
MR. RICHARD: They were well within the age limit.
Defense counsel stated that his reason for challenging these particular jurors was their age. However, the record does not reveal the ages of these jurors.
Defense counsel attempts to support his argument by directing attention outside of the record to exhibit "A" attached to his brief. Exhibit "A" is a computer printout of the St. Landry Parish Clerk of Court Jury List for jurors selected on November 24, 1992. This printout shows the age of both men to be about 65 years of age. Yet the list also reveals that Albert D. Robichaux, who was seated in the jury, was approximately 61 years old at the time of trial, and the record does not reflect that defense counsel objected to Robichaux. Therefore, the evidence, even if admitted, would indicate that age was not the true concern of defense counsel, and that his challenge was properly denied by the trial court.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant alleges that the trial court erred in failing to give his proposed special jury instructions and in giving an instruction on "flight." The defendant submitted seven proposed special jury instructions. However, in brief defendant admits that numbers two through six were substantially given by the judge in his charge to the jury. Thus, we will direct our focus to numbers one and seven.
C.Cr.P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The first proposed jury instruction addressed intent established by circumstantial evidence. It read:
In determining whether the accused had a specific intent to kill, evidence must establish the requisite mental element of specific intent as being present at the time of the commission of the alleged offense. Unless the accused has declared his intent, intent must be proven to exist beyond a reasonable doubt by circumstantial evidence.
The rule as to circumstantial evidence is: Assuming every fact to be proved that the *567 evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
In his ruling on this special charge, the trial judge found that it was essentially given in the general charge. Upon review of this jury charge, we find no error in that conclusion.
Proposed jury charge number seven was:
The fact that an offenders conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
When the offenders conduct is in defence of persons or property as follows; The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offence or trespass against property in a person's possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and this article shall not apply where the force of violence results in a homicide.
LSA-R.S. 14:18 and 14:19
The first paragraph of this proposed instruction is the first paragraph of R.S. 14:18, entitled "justification; general provisions." The second paragraph is nearly verbatim R.S. 14:19 with the exception that the statute requires that the property being protected must be in a person's lawful possession. The trial judge, in ruling on this charge, stated "No. 7 would need explanation, and is not applicable, specifically, to this case, but would need additional charges...."
Defendant admits that his perception was that he and those with him were under attack by a group of drug dealers attempting to rob them of their crack cocaine. Defendant and his companions could not have been in lawful possession of crack cocaine; therefore, the trial judge did not err in denying to give the charge. LSA-R.S. 14:19.
Defendant also objected to the jury charge concerning flight, though the record does not indicate any reason for this objection was given. C.Cr.P. art. 801 provides in pertinent part:
The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court's written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. Amended by Acts 1982, No. 458, § 1.

Since defendant did not state grounds upon which he based his objection for the record, it was not properly preserved. C.Cr.P. art. 801. Additionally, even had the objection been properly preserved, it has been abandoned by defendant's failure to argue in brief. State v. Lewis, 576 So.2d 1106, 1110 (La.App. 3 Cir.), writ denied, 580 So.2d 669 (La.1991). See also Uniform RulesCourts of Appeal, Rule 2-12.4. Therefore, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant alleges that, considering the evidence in a light most favorable to the prosecution, the trier of fact could not have, beyond a reasonable doubt, found the defendant guilty, especially in light of the fact that the defendant was responding to a perceived threat of great bodily injury.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of *568 fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, at 563, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it was required to prove the elements of the crime beyond a reasonable doubt. The defendant was found guilty of attempted manslaughter, in violation of R.S. 14:27 and 14:31. R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
R.S. 14:31 provides in part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
In State v. Dean, 528 So.2d 679, 682 (La. App. 2 Cir.1988), the court stated:
Specific intent to commit a crime is an element of an attempted offense. La.R.S. 14:27. More specifically, specific intent to kill is an element of the crime of attempted manslaughter. State v. Butler, 322 So.2d 189 (La.1975); State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La.1987); State v. Turner, 440 So.2d 834 (La.App. 2d Cir.1983). Hence, a conviction for an attempted offense must rest upon sufficient proof that the offender actively desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. La.R.S. 14:10 and 14:27. See State v. Parish, 405 So.2d 1080 (La.1981), on remand, 429 So.2d 442.
The plain-clothed police officers arrived at the Isaac residence in a gray Lincoln as Isaac and Alfred Barrow were attempting to back out of the driveway. The Cadillac driven by Isaac was in the street just to the east of the driveway, and was facing east. Barrow's maroon Cutlass was backing out. The officers parked their Lincoln just west of *569 the driveway. Officer Thomas testified that no officer had weapons drawn when they exited the vehicle. Officer Grimmett testified that, just as they approached the driveway from the road, shots were fired from the yard and that he had seen three individuals in the yard before the shooting began. Grimmett observed a person on the driver's side of the Chevrolet Blazer fire shots. Officer Gallow also saw two shots fired from the driver's side of the Blazer.
Defendant does not deny that he fired the shots, but claims that he fired the shots into the air merely to warn or scare those approaching; this testimony was contradicted by Officer Gallow, who testified that the suspects were firing in the direction of the police officers. As the first shots were fired, the officers hit the ground. Chief Caillier testified that the first shot went by his head and was fired without provocation. The second shot hit the dirt near his elbow.
A 9 mm bullet was recovered from the areas just behind where the officers were during the beginning of the exchange. Jim Churchman, the supervisor of the physical evidence unit at the Louisiana State Police Crime Lab, identified the bullet as having come from the 9 mm pistol carried by the defendant. Both the Stallard Arms 9 mm semi-automatic pistol used by defendant and the Ruger 9 mm pistol used by Officer Gallow were tested by the laboratory. Churchman testified that this bullet was fired by defendant's pistol.
Officer Gallow testified that he never fired his gun in the direction of the other officers.
Defendant abandoned the weapon as he fled the scene. Defendant claimed that Isaac told him that Chief Caillier had fired defendant's weapon before leaving the scene; however, both Isaac and Caillier denied that this occurred. We cannot say the jury erred in rejecting defendant's version of events under the circumstances.
When viewed in the light most favorable to the state, sufficient proof existed for the jury to find beyond a reasonable doubt that the defendant had the specific intent to kill under 14:31 A(1) and, under R.S. 14:27, committed an act for the purpose and tending directly toward the accomplishing of his object, the killing of a human being.

DECREE
Defendant's conviction and sentence are affirmed. Case remanded to the trial court to amend the commitment and the minute entry of the sentence to reflect that defendant is given credit for time served. Also, that the illegal portion of defendant's sentence, which requires him to serve his sentence without benefit of parole, probation or suspension of sentence be struck from the record, is to be deleted.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
KNOLL, J., dissents in part and assigns reasons.
KNOLL, Judge, concurring in part and dissenting in part.
I agree with the majority opinion in all respects excepts its disposition of defendant's assignment of error number three, the trial court's failure to give a special jury instruction on self-defense. For reasons which follow, I find that the trial court was obligated to instruct the jury on self-defense. I conclude that on the basis of this error, defendant's conviction must be reversed and this case should be remanded to the trial court for a new trial.
As the majority correctly points out, defendant was billed with attempted first-degree murder as provided in LSA-R.S. 14:27, 14:30(A)(2), i.e., "[w]hen the offender has specific intent to kill or to inflict great bodily harm upon a ... peace officer engaged in the performance of his lawful duties," and 14:30(A)(6), i.e., "[w]hen the offender has the specific intent to kill or to inflict great bodily harm while engaged in the distribution, exchange, sale, or purchase ... of a controlled dangerous substance...."
The jury convicted defendant of attempted manslaughter. Both attempted first-degree murder and attempted manslaughter require that the State prove defendant's specific intent to commit the crime, namely, that defendant actively desired to cause the proscribed criminal consequences to follow his act or *570 failure to act and that he committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. State v. Strother, 362 So.2d 508 (La.1978).
Defendant requested that the trial court charge the jury, in pertinent part, as follows:
"The fact that an offenders [sic] conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:

When the offenders [sic] conduct is in defence [sic] of persons or property as follows: The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offence [sic] or trespass against property in a person's possession;...." (Emphasis added.)
Defendant contends that he did not know that it was the police who were driving up. Instead, he contends that he and his friends thought they were under attack by a group of drug dealers attempting to rob them. Accordingly, he argues that the trial court should have specially instructed the jury as requested.
In addressing defendant's contention, the majority finds that defendant may not invoke this defense since the property in his possession was cocaine and thus, not property of which defendant could be lawfully in possession. I find that the majority, in so ruling, fails to consider that defendant's proposed jury instruction also referenced the defense of persons.
In State v. Miller, 338 So.2d 678 (La.1976), the defendant was threatening the family of his estranged wife with a shotgun. Another resident of the wife's home who was also armed confronted the defendant. Defendant testified that he began to retreat, but had to cross some open ground to make good his escape. The defendant claimed that when he turned and fired in the direction of the armed resident, he did so in self-defense with the intention of forcing the other man to take cover while defendant crossed the open area. The trial court failed to give a jury charge on self-defense. In reversing Miller's conviction, the Louisiana Supreme Court noted at page 681:
"In view of defendant's conduct immediately preceding the shooting, his version of the shooting can be characterized as extremely doubtful. And this conclusion undoubtedly influenced the trial judge to deny the requested charge. However, the question is not what the judge believed the evidence proved, or even what view this Court has of the evidence. The question is, instead, what the jury would believe the evidence established if they had been instructed on the law of justification."
In the case sub judice, it was strongly contested whether defendant was aware that the men approaching him were police. The police arrived at night, in an unmarked car and were in plain clothes. While the police testified that they wore their badges on their belts, it was defendant's position that these were not visible. Defendant and his companions were in the driveway of a residence when the police arrived. Gunfire erupted almost as soon as the police exited the car. Defendant claimed that he and his companions believed the police were other drug dealers attempting to steal their drugs.
Even if the appellate court and the trial court would determine that defendant's contention is doubtful, I find that the trial court was nonetheless obligated to instruct the jury on self-defense as requested by defendant. Accordingly, I would reverse defendant's conviction on this issue and remand this case for a new trial.