677 So.2d 471 (1996)
STATE of Louisiana, Appellee,
v.
Willie James WILSON, Defendant-Appellant.
No. CR96-46.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*473 Michael Harson, Keith A. Stutes, Assistant District Atty., Lafayette, for State of Louisiana.
G. Paul Marx, Lee Andrew Gallaspy, Willie J. Wilson, for Willie J. Wilson.
Before SAUNDERS, AMY and GREMILLION, JJ.
SAUNDERS, Judge.
On July 13, 1994, defendant, Willie Wilson, was indicted by a grand jury of one count of aggravated rape, a violation of La.R.S. 14:42, and one count of attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30. On September 25, 1995, the State dismissed the charge of attempted first degree murder. On September 26-29, 1995, defendant was tried by a jury and found guilty of aggravated rape. On October 4, 1995, defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction.

FACTS
On May 8, 1994, in Lafayette Parish, the defendant, Willie Wilson, assaulted the victim, Sally Collins, forced her into a wooded area and raped her vaginally and anally. The defendant further assaulted her anally with a bottle. Wilson then shoved a stick two inches in diameter into the victim's uterine cavity, causing injury. He beat her with sticks and stomped on her, fracturing her head. He removed all evidence linking him to the rape by pulling out clumps of the victim's pubic hair, scraping the underside of her nails, and stuffing dirt and leaves into her vagina, anus and mouth. Defendant left the scene, and the naked victim crawled out of the woods. She subsequently identified the defendant from a photographic lineup.

ERROR PATENT
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
In accordance with this article, all appeals are reviewed by this court for errors patent on the face of the record. We have found three errors patent. The first concerns defendant's arraignment. The minutes do not reflect that an arraignment was ever held. La.Code Crim.P. art. 831 provides in part that a defendant must be present at arraignment and when a plea is given unless he voluntarily absents himself. However, art. 832 provides that "the defendant may always object to his absence at the arraignment or plea to the merit, provided the objection is made before the commencement of trial." La.Code Crim.P. art. 555 states:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
Defendant never objected to the absence of an arraignment nor does he object on appeal. In State v. Freeman, 461 So.2d 496 (La.App. 3 Cir.1984), writ denied, 464 So.2d 314 (La. 1985), this court relied on the above article and State v. Sears, 298 So.2d 814 (La.1974), where the Louisiana Supreme Court stated:
It is true that a defendant has a right to be arraigned. C.Cr.P. 551. However, where a defendant enters upon trial without objecting to the defect, he is deemed to have waived his right under C.Cr.P. Art. 555.
Moreover, the defendant does not contend nor show that any prejudice resulted from the entering of the plea of not guilty. Cf. State v. Franks, 284 So.2d 584 (La. 1973).
Freeman, 461 So.2d at 498.
In State v. Brown, 620 So.2d 508 (La.App. 4 Cir.), writ denied, 625 So.2d 1062 (La.1993), a review of the record revealed no indication of an arraignment, as in the case sub judice. *474 The Brown court found the error harmless. In Brown, Freeman and Sears, the defendant was tried, and his plea of not guilty was assumed. Defendant has shown no prejudice resulting from the error, and he was tried and convicted. The defendant's plea of not guilty can be assumed, and the failure of the record to show that defendant was arraigned on the charges in this case is harmless error.
La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 651 So.2d 858 (La.1995).
La.Code Crim.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.1993).

ASSIGNMENT OF ERROR NO. 1
Defendant filed seven assignments of error with the trial court and has abandoned all but two. By his first assignment of error, defendant contends the trial court erred in allowing the State to use, in fact and implication, other crimes evidence, without proper notice and throughout the trial, which was so pervasive that it was prejudicial and denied the defendant a fair trial. Defendant claims the State depicted defendant as a "career criminal" by referring to the defendant as "an almost expert rapist," after relaying how defendant engaged in actions to eliminate any evidence of rape. He says this reference intimated that he had been through a rape trial before. He also contends the State prejudiced him by having a State's witness allege that the defendant had offered money for false testimony, and that the identification of defendant by the victim involved booking photographs from parish jail. Defendant contends the cumulative effect of these references was to depict the defendant as a person of bad character and was "classic prejudicial use of `other crimes.'"
La.Code Evid. art. 404(B) states:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The questioning and testimony concerning defendant's attempts to "cover up" the rape related to conduct that constituted an integral part of the act or transaction that was the subject of the trial. See State v. Brewington, 601 So.2d 656 (La.1992). No physical evidence was obtained, and the State was *475 attempting to show that the defendant had engaged in actions calculated to eliminate evidence. The defendant had scraped the victim's fingernails, pulled out her pubic hair and stuffed her body cavities with leaves and sticks. The victim herself testified to these acts. The prosecution's reference to defendant as an "expert rapist" was in rebuttal to the lack of physical evidence. We find that the reference was to show that defendant knew about eliminating physical evidence and not to show that defendant had already been through a rape trial.
Defendant also claims he was prejudiced by the testimony of a State witness that defendant had offered money for false testimony. During defendant's trial, the State called as a witness another prisoner who shared a cell with the defendant after defendant's arrest. Felton M. Hopkins testified that he was incarcerated on May 13, 1994, and was placed in the same cell as the defendant. Hopkins stated that he and the defendant talked about the rape and beating of the victim, Sally Collins, and that the defendant admitted the offenses. Hopkins later contacted Detective Vincent and gave a statement to the officer. During the direct examination of Hopkins by the State, the defense made an objection, claiming that it had no notice of the intent of the State to use the statement of the defendant which was made to Hopkins. The court heard arguments on the objection, which was based on La.Code Crim.P. art. 768. This article states:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
During the argument on the objection, it was revealed that the defense attorney had open file discovery in the case, and had reviewed Detective Vincent's report, which included a reference to the statement of Hopkins. Furthermore, the actual statement given by Hopkins was contained in a binder which was read by defense counsel prior to trial. After discussion concerning the objection, the court allowed a recess and permitted counsel to review the statement again. Defense counsel could not recall reading the part of Hopkins's statement which included the admission of the defendant, but argued that the defense should have been given notice under article 768. The court correctly ruled that the clear terms of the article do not require notice if the defense has been granted discovery. This was the correct ruling, and the defense suffered no prejudice from the actions of the state. As noted, the statement was included in materials reviewed by defense counsel, and the trial court allowed the defense to review the statement again during a recess.
During the questioning of Hopkins by the prosecutor, the defense moved for a mistrial. The exchange which prompted the defense motion was as follows:
Q. Now, did he tell you anything else or ask you anything else?
A. Well, at one time he had askedhe told me: If it was me, he would have done it for me.
Q. Do what?
A. Testify in his behalf.
Q. Well, what did he ask you to do?
A. He wanted me to be his witness. He wanted me to say, um, that we was at my house. He don't even know where I stay.
Q. Well, did you want to do that for him?
A. No. I didn't want to get involved.
The objection was argued later, outside the presence of the jury. The defense argued that the statement by Hopkins constituted "other crimes" evidence. Defense counsel contended that the defendant's alleged statement to Hopkins was an attempt to persuade Hopkins to commit perjury. Counsel specifically stated that he understood that there was a suggestion that money be paid in exchange for a favorable statement from Hopkins. The court ruled that the statement was not a reference to other criminal activity.
We note that it was the defense which elicited the statement from Hopkins which concerned the alleged offer of money to Hopkins in exchange for a statement on defendant's behalf. During this cross-examination *476 of Hopkins, it was revealed that Hopkins had been with the defendant on the day of the crime and had dropped the defendant off prior to the attack.
First, we find that the trial court correctly ruled that Hopkins's statement, which formed the basis for the defense objection, was not evidence of another crime. The defendant was with Hopkins during the course of the day on which the attack occurred. Hopkins later wrote a letter to a friend of the defendant, and gave a statement to police which detailed the events of the day of the crime. Defendant's friend offered to help secure an attorney for Hopkins if Hopkins gave a statement concerning his actions with the defendant on the day of the offense. However, no such assistance was forthcoming. Under these circumstances, it does not appear that Hopkins' remarks were an implication that defendant attempted to convince Hopkins to commit perjury. Defendant could have simply wanted Hopkins to get involved in the case, which Hopkins was reluctant to do. Accordingly, this statement did not constitute impermissible other crimes evidence.
Additionally, even if the statement was perceived as an attempt to persuade Hopkins to commit perjury, the statement and refusing a mistrial is harmless. Evidence of other crimes is generally inadmissible without pretrial notification and a hearing. State v. Prieur, 277 So.2d 126 (La. 1973). However, the supreme court recently addressed the question of other crimes evidence in the appellate context and concluded that the erroneous admission of such evidence is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.1995), 664 So.2d 94, rehearing denied, (La. 1/12/96). The court stated that such introduction of evidence may be quantitatively assessed in the context of the other evidence and may be reviewed for harmless error. Johnson, 664 So.2d at 101.
In defendant's case, there was overwhelming evidence presented which proved that defendant was guilty of the charged offense. The victim survived the attack and identified the relator as her assailant. Although he denied sexually assaulting the victim, the defendant admitted to the police that he attacked and attempted to rob her. Hopkins testified the defendant admitted that he raped and beat the victim repeatedly.
Accordingly, the trial court correctly ruled that Hopkins's statement was not cause for a mistrial. The evidence of defendant's guilt was considerable, and any error in admitting Hopkins's statement was harmless when assessed in the context of this other evidence.
Defendant further asserts that a State witness, Lafayette Police Officer Ted Vincent, prejudiced him by commenting that he put together the photo lineup of defendant from a file of mug shots. The police officer stated:
Q. What effort did you make to attempt to identify a suspect?
A. By asking her a physical description.
Q. Okay. And did you locate any suspects to present to her for identification?
A. Yes, sir.
Q. How did you do that?
A. Basically by utilizing mug shots possessed by the C.I.D. division.
Q. All right. Now, did you, in fact, put together a photo lineup?
A. Yes.
The police officer's reference mentioned the defendant's mug shot, thus indicating defendant had a prior arrest. Defendant objected and moved for a mistrial which the trial court denied. The trial judge failed to admonish the jury regarding the references. In State v. Jones, 332 So.2d 466 (La.1976), a State's witness explained that the victim identified the defendant in a photographic lineup which was composed from a file of mug shots. The court stated:
A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, would require a mistrial on motion of defendant. La. Code Crim.P. art. 770(2). First, a police officer is not a "court official"; therefore, *477 article 770 does not apply. Rather, article 771 of the Code of Criminal Procedure would be the applicable article. State v. Lepkowski, 316 So.2d 727 (La.1975); State v. Clark, 288 So.2d 612 (La.1974). The trial judge found no bad faith on the part of the state. Nor does defendant contend that the remark regarding defendant's record was obtained by design of the prosecutor. It is also obvious that it was not deliberately uttered by the police witness to prejudice defendant. We are satisfied that any prejudice which may have occurred as a result of this remark was cured by the trial judge's admonition. A mistrial was not required under article 771, particularly since the remark was not responsive to the prosecutor's question. Unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for the reversal of a conviction. State v. Luneau, 323 So.2d 770 (La.1975); State v. Howard, 283 So.2d 197 (La.1973). Hence, Assignment of Error No. 8 lacks merit.
Id. at 471.
In the case sub judice, defense counsel moved for a mistrial, failed to ask for an admonition and the trial judge did not admonish the jury. In State v. Barry, 428 So.2d 521, 522 (La.App. 2 Cir.1983), a police detective referred to the defendant's record during his explanation of how the defendant was identified. The trial judge neither ordered a mistrial nor admonished the jury. In affirming the denial of the motion for mistrial the court explained:
Under LSA-C.Cr.P. art. 771 the court has the discretion of granting a mistrial when an admonition is insufficient to afford the defendant a fair trial. State v. Prieur, 277 So.2d 126 (La.1973) states the standard to be used in applying this article through the following language:
"The admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant.... The probative value of evidence of unrelated offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to the present guilt of the accused." Id. at 128.
The testimony at issue resembles quite closely that of the testimony in the case of State v. Jones, 332 So.2d 466 (La. 1976) when the following question and answer ensued:
"Q. Approximately how many photographs did you look through in ten or fifteen minutes to pick the particular six or seven that you were going to use for identification?
A. That would be hard to say. First we went to the B of I and we pulled the subject's record. Let me correct myself. In the Detective Bureau we have a mug shot file...." Id. at 471.
In Jones, supra, the witness, a police officer, just as in the case now before this court, referred to defendant's criminal record while also inferring that his picture was in the "mug shot file." The trial judge immediately admonished the jury and on appeal the court essentially stated that there was no deliberate prejudice to the defendant, and furthermore, if any prejudice did occur it was cured by the trial judge's admonition.
Similarly, the police officer in the present case referred to criminal records of defendant. Although no admonition was held, defense counsel failed to request for one under LSA-C.Cr.P. art. 771. As there was no formal request for an admonition, there was no prejudice on the part of the defendant. See State v. Hayes, 414 So.2d 717 (La.1982). The trial judge properly retired the jury and denied the motion for mistrial. He then correctly resumed with the presentation of evidence as this statement within the context of the trial proceeding was not prejudicial, nor was the failure of the trial judge to admonish the jury prejudicial.
Barry, 428 So.2d at 522.
Thus, the trial judge's failure to admonish the jury does not warrant a mistrial. Furthermore, although the answer was responsive to the State's question, no bad faith was established on the part of the prosecutor in asking the police officer how he located suspects to present to the victim for identification. *478 We find that this reference was not so prejudicial as to warrant a mistrial. Further, the cumulative effect of the three references does not warrant reversible error, and this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
By his second assignment of error, defendant contends the trial court erred in not allowing the jury to hear the expert testimony and opinion of Dr. Ronald Harper, thereby restricting the defendant's constitutional right to present a defense. The victim was admittedly drinking and smoking crack during the hours before she was raped. The defendant states he wanted Harper to testify about the effects of drugs and alcohol on an individual's short-term memory and inability to recognize names and faces. La.Code Evid. art. 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
La.Code Evid. art. 704 states:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
The issue of expert opinion on the credibility of the victim was addressed in State v. Foret, 628 So.2d 1116 (La.1993). In Foret, the State wanted to boost the credibility of the young victim of sexual abuse by having an expert testify about recantations and delays by children in reporting child abuse. The court, while stating that expert testimony could be used for limited purposes, refused to allow the expert to comment on the credibility of the victim. Id. at 1130. We note that if the expert relays, in general terms, a scientifically acceptable explanation for an issue, without making an evaluation as to the particular victim's credibility, the testimony may be allowed in for a limited purpose. Foret, 628 So.2d 1116. Therefore, based on the Foret decision, the expert in the case sub judice could only have possibly testified to the general effects of cocaine on an individual's perception and memory.
While the defendant now claims in his brief that the testimony was to be used to show the effects of drug intoxication, it is important to recount what transpired at the preliminary hearing on the admissibility of the testimony. At the hearing, defense counsel asked that the doctor, who had not examined the victim, be allowed to testify as to medical evidence on the effects of the victim's ability to recall. Defense counsel further argued that the victim had testified as to her ability to recall and stated the drugs had no effect on her. In light of the testimony, defense counsel felt an expert should be able to testify on how the body functions under the effects of alcohol and drugs. The trial judge at first allowed Harper to testify as to general questions concerning the effect of cocaine, but stated he could not be asked hypothetical questions containing the facts of the case sub judice. Out of the hearing of the jury, Harper was questioned for the purposes of laying a foundation. After questioning the doctor concerning his education, training and experience, defense counsel tendered him as an expert on the effects of cocaine, marijuana, methamphetamine and alcohol on the human body. The trial judge asked defense counsel if that was all he was going to ask Harper when the jury came out. Defense counsel responded, "of the effects of that on the human body. That's what I understand you've limited me to." The court further asked:
THE COURT: The only fact that you're calling him for here to say is that the victim is mistaken or is wrong because of cocaine as to what she relates as theas what happened at the offense?
MR. GALLASPY: I want this jury to know what
THE COURT: Is that theWait. Just answer the question. Is that why you're calling him here as a witness, to show the victim is wrong because of the effects of cocaine as to what happened at the crime?
A. I think that the

*479 THE COURT: Yes?
MR. GALLASPY: Yes, Judge, that would be the purpose of it in the sense of he's able to testify about the effects of that on the abilityof the body's ability to perceive it.
THE COURT: Well, The Code of EvidenceI was reading while y'all were discussing, and The Code of Evidence is clear that expert testimony is inadmissible on the question of credibility in 702, in 404(B), in 404(A). It's in there three or four times. ThatYou can't do that. I mean, that's not a fact question. He's notHe can't assist us in that question. I mean, he can be called as an expert if there's some thing that is at issue in the case, other than the credibility of a witness, and you just said that's the only reason that you're calling him is for the credibility ofSee, when you first told me yesterday that you called him as a witness, I thought you were calling him as a witness to testify about the effects on your client
MR. GALLASPY: Oh, no, Judge.
THE COURT: of cocaine. And then right before we walked into the courtroom, you had indicated to me that it was the effects on the victim. And I haveYou know, I'm rereadingThe Code of Evidence is pretty long, and I'm rereading it. And that, you can't call an expert for that. I mean,I mean, that is the exactWhat he said, I'm reading it for myself, and that is the exact words under the comment of 702 (Reading): Expert testimony is inadmissible on the issue of credibility of the victim.
I mean, you can't do it. Exactly what you're calling him for, you can't call a witness for that because that is the question for the jury. Is she right? Is she wrong? Is she telling the truth? And I mean, IAs, um, I guess if there's nothing else that you called the witness for, you can go ahead and ask it on the proffer.
I was going to let him testify, but if that's the only reason that he's testifying, then it's inadmissible. It'll confuse the jury as to their ability to judge her credibility.
MR. GALLASPY: Note our objection, Judge. I think that that's unconstitutional.
THE COURT: You want to proffer his questions?
MR. GALLASPY: Yeah, Judge. I want to do a proffer.
The defense counsel's proffer contained hypothetical questions describing the victim without using her name, as well as the circumstances surrounding the victim's drinking and drug use that day and the circumstances of the crime. The doctor's answer basically went through the effects of the various drugs, both long-term and short-term based on the prevailing opinion in medical and scientific communities. Defense counsel asked Harper if based on the hypothetical facts presented, he had an opinion on the individual's ability to perceive, recall and remember. Although he said it would likely be impaired, he felt he would have to examine that person to render an opinion with medical probability. He further refused to ascribe a percentage without examining the individual. Harper then discussed the effects of a head injury like that sustained by the victim.
We find that, based on the proffer, the trial judge properly refused to allow the doctor to testify. Defendant wanted to use Harper's testimony to comment on the particular victim's credibility. Even though defense counsel would not be using the victim's name, the hypothetical exactly matched the victim's profile and circumstances. Harper's opinion would not have been used to aid the jury and instead would have been used to decide an ultimate issue. This evidence was inadmissible.
Furthermore, even if the testimony was admissible under Foret, it would have been more prejudicial than probative. The victim was cross-examined extensively concerning her drug habit and what drugs she had taken prior to the rape. The jury was properly allowed to decide the issue of her credibility on its own. Harper's testimony would only serve to confuse the jury because Harper admitted he would need to examine the victim to form an opinion with any certainty and refused to state probabilities. The trial judge did not err in refusing to *480 allow Harper to testify before the jury. Therefore, this assignment of error lacks merit.

CONCLUSION
The trial judge properly denied defense motions for a mistrial and did not err in finding inadmissible Dr. Harper's testimony on the credibility of the victim. We find that all the assignments of error lack merit and defendant's conviction is affirmed. The absence of the arraignment from the minutes is harmless error as defendant does not raise this issue on appeal. The district court is directed to inform the defendant of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and file written proof that the defendant received the notice in the record of the proceedings. Furthermore, we amend the sentence to reflect that the defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, this court remands this case and orders the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 640 So.2d 561.
AFFIRMED; REMANDED WITH INSTRUCTIONS.