STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-249

STATE OF LOUISIANA

VERSUS

ARTHUR MAJOR, III

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 97-180297
HONORABLE JOHN E. CONERY, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese and J. David Painter, Judges.

CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.

Carey J. Ellis
P.O. Box 719
Rayville, LA 71269
Counsel for Defendant-Appellant
 Arthur Major, III

Arthur Major, III
3751 Lauderdale Woodyard Rd.
Kinder, LA 70648
Pro se

J. Phil Haney
Anthony J. Saleme, Jr.
Wilbur L. Stiles, III
St. Martin Parish Courthouse
St. Martinville, LA 70582
Counsel for Appellee
 State of Lousiana

**PAINTER, Judge.**

This case comes before us on remand from the Louisiana Supreme Court. This court previously reversed the Defendant's conviction for insufficiency of the evidence in *State v. Major*, 03-249 (La.App. 3 Cir. 10/8/03), 857 So.2d 1252. The supreme court reversed this court, reinstated the conviction, and remanded for consideration of the remaining assignments of error. *State v. Major*, 03-3522 (La. 12/1/04), 888 So.2d 798.

FACTS

On June 9, 1997, the Defendant, Arthur Major, III, and three passengers were driving on I-10 in St. Martin Parish, Louisiana. A state trooper stopped them for a traffic violation. Major consented to a search. The search uncovered more than a pound of cocaine under the dashboard.

The State filed several separate bills of information, on different dates, against Major. Ultimately, the State tried Major for Possession of Cocaine in excess of four-hundred grams, a violation of La.R.S. 40:967(F)(1)(c). The jury found Major guilty as charged. Major appeared for sentencing on June 21, 2002. He made oral motions for post-verdict judgment of acquittal and for new trial. The court denied both motions. Major waived any sentencing delays, and the court sentenced him to forty years at hard labor. On July 2, 2002, without holding a hearing, the court denied Major's subsequent counsel-filed motion to reconsider sentence. On appeal, the conviction was overturned by this court. The Louisiana Supreme Court reinstated the conviction and remanded the matter to this court.

We now consider those assignments of error not considered on the previous appeal.

1

ERRORS PATENT

Pursuant to La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent and one issue requiring discussion.

The trial court did not impose a fine although one is mandated by statute. Louisiana Revised Statutes 40:967(F)(1)(c) requires the imposition of a fine of not less than $250,000.00 or more than $600,000.00. Therefore, the sentence appears to be illegally lenient. This court may recognize an illegally lenient sentence on its own. La.Code Crim.P. art. 882; *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790; *State v. August*, 03-1478 (La.App. 3 Cir. 4/7/04), 870 So.2d 553.

The trial court in the present case chose not to impose a fine because it felt Major was unable to pay the fine. The trial court explained that:

> It [is] obvious to the Court that the defendant is unable to pay any fine at all. He's serving fifteen years at hard labor for a 1999 conviction in Orleans Parish for possession of more than twenty-eight (28) grams but less than two hundred (200) grams of cocaine. He claims that sentence is on appeal, but nonetheless it demonstrates his complete inability to pay any type of fine.

It is well-settled that "[a]n indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)." *State v. Zabaleta*, 96-2449, p. 1 (La. 3/7/97), 689 So.2d 1369. The need for incarceration raises an issue when fines or costs are not paid, because La.Code Crim.P. art. 884 requires that, when a trial court imposes a fine or costs, it must also impose a specified term of imprisonment in the event the defendant defaults on payment of the fine or costs. Because an indigent person may not be incarcerated for failure to pay a fine, the supreme court has vacated

2

"the portion of . . . [a] sentence which provides for a jail term in the event of default of payment of a fine . . . ." *Zabaleta*, 689 So.2d 1369.

The supreme court has not required vacation of the fine itself. In *State v. Dickerson*, 579 So.2d 472, 483 (La.App. 3 Cir.), *writ granted on other grounds*, 584 So.2d 1140 (La.1991), this court, when faced with a situation where a fine had to be imposed on a defendant it felt was indigent, found that "the trial court's imposition of a fine upon the indigent defendant in this case, which did not provide for a jail term in the event of default of payment of the fine, is not excessive and is not an illegal sentence."

Following *Dickerson*, we find that the trial court in the present case, even in light of its determination that Major was indigent, should have imposed the mandatory fine but without imposing default time under La.Code Crim.P. art. 884. The imposition of a fine without default time would at least allow the State to enforce collection of the fine in the same manner as a money judgment in a civil case. *See* La.Code Crim.P. art. 886; *State v. Conley*, 570 So.2d 1161 (La.1990).

Therefore, we vacate the sentence and remand the case for resentencing. If, upon remand, the trial court finds that Major is indigent, it is to impose the mandatory fine without ordering default time in the event of nonpayment.

Additionally, in this case, Major was originally charged jointly with three other co-defendants by bill of information filed July 15, 1997. The original charge was possession with the intent to distribute cocaine. On November 18, 1997, the State filed a motion to amend the charge to possession of over four hundred grams of cocaine. The motion was granted by the court, and, on December 9, 1997, an amended bill was filed charging the four defendants with this offense. Then, on October 22, 1998, the State filed a bill charging only Major with possession with the

3

intent to distribute cocaine as a second offender, pursuant to La.R.S. 40:982. On August 27, 1999, the State filed another bill of information charging Major alone with possession of four hundred grams or more of cocaine as a second and subsequent offender. However, at trial, when reading the bill of information to the jury, the clerk referred to the bill amended on November 18, 1997, which charged Major with possession of over four hundred grams of cocaine. The jury found Major guilty of possession of four hundred grams or more of cocaine. Although it is not clear from the record why the State did not go to trial on the most recent bill filed in the record, we note that the prosecutor did not object when the clerk read the bill of information to the jury. Therefore, we find no error in this situation.

EXCESSIVE SENTENCE

In his counsel-filed second assignment, Major argues that his forty-year sentence is excessive. Immediately after sentence was pronounced on June 21, 2002, Major entered an oral objection. He later filed a written Motion to Reconsider Sentence, which the court summarily denied on July 2, 2002.

In his motion in the trial court, Major argued that the trial court failed to give due consideration to various mitigating factors, while giving undue weight to aggravating factors. His argument on appeal is a more general claim that the trial court failed to properly weigh mitigating factors in accordance with La.Code Crim.P. art. 894.1. He also argues, as he did below, that his sentence is out of proportion with the crime.

Regarding the first portion of Major's argument, La.Code Crim.P. art. 894.1 states, in pertinent part:

> A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if any of the following occurs:

4

(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.

(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

(3) A lesser sentence will deprecate the seriousness of the defendant's crime.

. . . .

C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.

In formulating the sentence, the trial court observed:

BY THE COURT:

All right. Thank you.

The defendant was convicted by a jury for possession of more than four hundred (400) grams of cocaine and at the time of his offense the mandatory minimum sentence was no less than thirty (30) years at hard labor, nor more than sixty (60) years, plus a fine of between two hundred and fifty and six hundred thousand dollars. It [sic] obvious to the Court that the defendant is unable to pay any fine at all. He's serving fifteen years at hard labor for a 1999 conviction in Orleans Parish for possession of more than twenty-eight (28) grams but less than two hundred (200) grams of cocaine. He claims that sentence is on appeal, but nonetheless it demonstrates his complete inability to pay any type of fine.

In 2002 the penalty for this crime was changed by the legislature. The legislative changes are not retroactive. The term of imprisonment is not less than fifteen (15) years, nor more than thirty (30) years. It does demonstrate a legislative intent to lower the penalties for these types of crimes, and that legislative intent seems to have been fueled mainly by the cost that the State of Louisiana incurs in incarcerating prisoners on drug offenses for prolonged periods of time.

It's unclear as to whether the legislative body considered the cost to the general population of allowing convicted drug dealers to get back on the street and re-offend. It does appear that this particular gentleman has not learned his lesson over the years having been convicted in California, given a break on a drug offense, put on probation there again in 1987.

5

The Court has considered all of the sentencing guidelines under Article 894.1 and finds that this defendant is in need of incarceration.

The mitigating factors he presented were by way of argument and by way of his statement as opposed to evidence, but nonetheless the Court has considered the mitigating factors that he has an eighteen year old and two small children, that he is self-employed. The booking sheet introduced by the State for this offense does not corroborate his testimony about his children but it does corroborate that he was self-employed. It does appear to the Court that his main employment seems to have been dealing in cocaine as opposed to his dump truck business.

The defendant's criminal conduct in this particular case was transporting a large amount of cocaine, I'd say relatively large amount, over a pound and a half here in St. Martin Parish. The jury heard overwhelming evidence of his guilt and the Court finds that the fact that this defendant, having previously been on probation twice, was engaged in narcotics trafficking by transporting this large sum of cocaine through St. Martin Parish, is especially salient with respect to his sentence.

The Court also has considered his subsequent Orleans conviction for possessing more than twenty-eight (28) but less than two hundred (200) grams of cocaine and it does appear that he was actually selling cocaine from the arrest reports in the record while out on bond on this offense. Whether or not that conviction is eventually upheld the Court nonetheless is entitled to consider it.

The facts behind that arrest finds [sic] that the defendant therefore is at a major risk for a continuing commission of additional felonies and that a long jail sentence is warranted under the facts of this case.

Considering all of the sentencing guidelines it will be the sentence of this Court that Arthur Major, III, serve forty (40) years at hard labor. The Court is going to ask that that, order that that sentence run consecutive to any other time which he may be serving a prison sentence.

The court's comments represent a thorough survey of factors relevant to Major's sentencing. It is well-settled that a sentencing court need not recite a formulaic list of factors considered; the record merely needs to reflect that Article 894.1 was properly considered in formulating the sentence. *State v. Boudreaux*, 00-1467 (La.App. 3 Cir. 4/4/01), 782 So.2d 1194, *writ denied*, 01-1369 (La. 3/28/02), 812 So.2d 645; *State v. Alexander*, 97-169 (La.App. 3 Cir. 6/4/97), 696 So.2d 171,

*writ denied*, 97-1803 (La. 12/12/97), 704 So.2d 1199.  Therefore, we find no merit in this argument.

Regarding his claim that the forty-year sentence is constitutionally excessive, this court has explained the analysis for excessiveness claims:

> In determining whether a sentence is unconstitutionally excessive, we apply the following standard:
>
>> La. Const. art. I, § 20 ensures that "[n]o law shall subject any person to euthanasia, to torture, or to *cruel, excessive, or unusual punishment.*"  A punishment is considered constitutionally excessive if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more tha[n] the purposeful and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime."  *State v. Wilson*, 96-1392, p. 3 (La.12/13/96); 685 So.2d 1063, 1065 *citing Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)[, *cert. denied*, 520 U.S. 1259, 117 S.Ct. 2425 (1997)].
>
> *State v. Blackmon*, 99-391, p. 5 (La.App. 3 Cir. 11/3/99); 748 So.2d 50, 53, *writ denied*, 99-3328 (La.4/28/00); 760 So.2d 1174.
>
> In *State v. Cook*, 95-2784, p. 3 (La.5/31/96); 674 So.2d 957, 959, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996), the Louisiana Supreme Court held:
>
>> The only relevant question on review, however, was "whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate."  *State v. Humphrey*, 445 So.2d 1155, 1165 (La.1984) (citing *State v. Williams*, 412 So.2d 1327 (La.1982)).

*State v. Hymes*, 01-0089, p. 2 (La.App. 3 Cir. 6/6/01), 787 So.2d 604, 605-06.

At the time of the offense, June 1997, La.R.S. 40:967(F)(1)(c) stated:

> Any person who knowingly or intentionally possesses four hundred grams or more of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than thirty years, nor more than sixty years and to pay a fine of not less than two hundred fifty thousand dollars, nor more than six hundred thousand dollars.

Therefore, the sentence imposed fell in the lower-middle range of possible sentences. In light of *Cook*, the sentence imposed on Major is not excessive.

SPEEDY TRIAL

In his first *pro se* assignment, Major alleges his constitutional right to a speedy trial was violated and that the statutory limitations upon commencement of trial were violated.

The record reveals the latter argument was not made until after his trial and conviction, when he attempted to raise the issue with an oral *pro se* motion. The two pre-trial motions to quash in the record were filed by counsel and do not include this issue. Also, the issue of time limitations was not raised during a hearing on the first motion to quash, on September 9, 1999. Louisiana Code of Criminal Procedure article 581 states in part that: "Upon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment. The right of dismissal is waived unless the motion to quash is made prior to trial." Because Major failed to raise the issue via a pre-trial motion to quash, it was not preserved for review and we need not consider it.

Major's other argument, raising his federal constitutional right to a speedy trial, was not raised below. He called his post-trial oral motion a motion to quash and appeared to refer to his statutory right to a speedy trial. However, this court has previously stated that it is unclear whether the constitutional right to a speedy trial may be waived. *State v. Buckley*, 02-1288 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193. Therefore, out of an abundance of caution, we will consider the merits of the argument as the *Buckley* court did.

This court has previously explained the appropriate analysis:

8

[I]n *Barker v. Wingo*, [407 U.S. 514, 92 S.Ct. 2182 (1972)] the United States Supreme Court identified four factors to determine whether a particular defendant had been deprived of his right to a speedy trial; namely, (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; (4) prejudice to the defendant.

*State v. M.M.*, 00-1296, p. 35 (La.App. 3 Cir. 8/29/01), 802 So.2d 43, 69, *writ denied*, 01-3370 (La. 10/4/02), 826 So.2d 1121 (footnote omitted).

The supreme court has explained:

The first of the *Barker* factors, the length of the delay, is a threshold requirement for courts reviewing speedy trial claims. *United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir., 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). This factor serves as a "triggering mechanism." *State v. Willis*, 94-0056, p. 4 (La.App. 1 Cir. 3/3[/]95), 652 So.2d 586, 588. Unless the delay in a given case is "presumptively prejudicial," further inquiry into the other *Barker* factors is unnecessary. *Id.* However, when a court finds that the delay was "presumptively prejudicial," the court must then consider the other three factors. *Id.*

*State v. Love*, 00-3347, p. 16 (La. 5/23/03), 847 So.2d 1198, 1210.

As mentioned above, the State filed the original bill of information charging Major and three co-defendants with possession of cocaine with intent to distribute on July 15, 1997. However, the State filed a new bill on October 22, 1998, charging Major alone with possession of cocaine, second/subsequent offender. On June 9, 1999, the State charged Major and the co-defendants with possession, in excess of 400 grams. Then on August 27, 1999, the State charged Major alone with possession of more then 400 grams of cocaine, second/subsequent offender. All four bills were apparently based upon the same set of facts from June 9, 1997. Even measuring from the most recent bill, the delay until the March 2002 trial was slightly more than two and one-half years. Because lesser delays have been found presumptively prejudicial for purposes of *Barker*, we will consider the other three factors. *Love*, 847 So.2d at 1211.

9

The second factor focuses on the reason for the delay. The current record shows a number of continuances in the case. The minutes indicate that at least a dozen continuances were orally requested by the State between December 1997 and November 2001. Also, the State re-billed Major several times between the filing of the initial bill in July 1997 and the final bill in August 1999. However, the minutes do not show that Major objected to the continuances. Additionally, the minutes show a defense-requested continuance in March 1998, a joint motion for continuance in September 2000, and another defense-requested continuance in December 2001. Major also filed four written requests for continuances in October 1998, March 2000, November 2000, and January 2001. It does not appear that Major contested any of the various new bills on the basis of his right to a speedy trial. Major's first motion to quash, filed in December 1997, alleged improper selection of the petit jury venire; the second motion to quash, filed in September 1999, alleged a defect in the underlying statute. Further, Major had ongoing criminal proceedings in Orleans Parish in 1999 and 2000, for a crime committed while he was out on bond for the current offense. Taking these various facts into account, the delay cannot be entirely attributed to the State; at least some of the delay may be attributed to Major.

Regarding the third *Barker* factor, it appears Major did not assert his constitutional right to a speedy trial while before the trial court. As mentioned earlier, Major made an oral *pro se* motion to quash after he had already been convicted. The motion was based upon the statutory time limitations for commencement of trial.

Regarding the final *Barker* factor, Major does not clearly allege any prejudice to his case, e.g., loss of witnesses, due to the delay at issue. Although the language in his *pro se* brief is not clear, he appears to complain about being incarcerated during the delay. However, he also appears to acknowledge that some period of the

10

incarceration was due to the Orleans Parish proceedings. Further, as already noted, the discussion at the sentencing hearing indicated that he had been released from jail on bond in connection with the offense *sub judice* when police arrested him in connection with the Orleans Parish offense. As a result, his incarceration during the delay at issue was not attributable to the State's actions. Further, although incarceration is inherently prejudicial, it does not weigh heavily in a *Barker* analysis, which focuses upon prejudice to a defendant's *case*. In *State v. Van Dyke*, 03-0437 (La.App. 3 Cir. 10/1/03), 856 So.2d 187, *writ denied*, 03-2777 (La. 2/13/04), 867 So.2d 689, this court acknowledged the inconvenience and discomfort of the defendant's having spent six years and five months in jail without trial. However, this court held that this type of prejudice was not dispositive, as the defendant failed to show any prejudice to the preparation of his case. *Id.*

Thus, applying the *Barker* analysis to the present case, we find no error in this regard.

INTRODUCTION OF IRRELEVANT EVIDENCE

Major asserts that the trial court allowed the State to introduce irrelevant evidence. Although his conviction was based upon a quantity of cocaine found concealed under the dashboard, the State also introduced evidence regarding marijuana that Major asserts belonged to a backseat passenger. Major argues this evidence was more prejudicial than probative.

As La.Code Evid. art. 403 sets forth: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

The following was adduced at the trial on the merits:

11

BY THE COURT:

Okay. Back on the other crimes ruling again: The State is contending that the other crimes evidence, the marijuana, is not being shown to prove bad character on the part of Mr. Major, but it is shown to prove knowledge of Mr. Major's part as part of the circumstantial evidence that he had knowledge that drugs were in the vehicle; so it is relevant. The question is: Is the prejudicial value so great that it outweighs the probative value? During voir dire Defense counsel focused on guilty knowledge as an essential element of the crime and repeated questions to the jury focused on the question of guilty knowledge and circumstantial evidence must exclude [every] reasonable hypothesis of innocence. Because of that focus during voir dire, it is obvious to the Court that guilty knowledge is a critical element in the trial and was stated by both the State and the Defense during Opening as well. So the Court finds that the prejudicial effect of this trooper testifying about finding marijuana that Mr. Major had told the trooper was not his to start with is not overwhelming, and that the probative valve [sic] of the evidence outweighs the prejudicial effect, and the Court will allow the evidence to be admitted to show guilty knowledge. The evidence is also admissible to show what this trooper did as a result of having heard and seen what the other trooper told him about the marijuana, to where he actually went up to the marijuana and found it himself. So that part of the testimony is admissible for another reason, not to prove the truth of the matter asserted, but to show what this witness did as a result of having heard from the other trooper that which he heard.

BY MRS. JONES:

Note our objection for the record, Your Honor.

. . . .

BY MR. SALEME: (Continuing)

Q. Trooper Bergeron, I believe we were discussing a matter that occurred just prior, prior to your conducting a search of the vehicle. First of all, what -- who was present at this time at the scene?

A. Master Trooper Lester Bernard, and I believe that Trooper Courville was around in that time showing up.

Q. Okay. Any other persons besides the four individuals in the car at the scene at that time?

A. No, sir.

12

Q.  Did anything happen prior to your searching the vehicle? Well, we did that. When you obtained the consent to search, okay, did, did you advise Mr. Major why you wanted to search his vehicle?

A.  Yes, sir.

Q.  Okay. What did you tell him?

A.  I told him that I was suspicious of their trip, that I detected the odor of marijuana inside, present inside the vehicle. He said. . . .

Q.  He responded?

A.  Yes, sir.

Q.  Okay. What did he respond?

A.  He stated that he did not smoke marijuana, but they were smoking marijuana in there earlier. And I asked for the consent to search.

Q.  And you indicated that just prior to searching something occurred?

A.  Yes, sir.

Q.  What was that?

A.  Master Trooper Lester Bernard observed the passenger in the rear seat, Mr. Banks, Eric Banks, throw down a package of marijuana.

Q.  Okay. And did you observe that package?

A.  After the trooper told me what happened, yes, sir, I observed it, and I secured it.

Q.  Did, did you subsequently, did you subsequently go into conducting your search?

A.  I went into securing the marijuana. Trooper Courville arrived at that time and he searched -- began to search the vehicle.

Q.  Did you have the opportunity to observe Trooper Courville searching the vehicle?

A.  Yes. I observed after I secured that he was searching the vehicle.

Q.  Now the marijuana was taken into custody?

A.  The marijuana?

13

Q.   Yes.

A.   Yes, sir.

Q.   Were you able to determine who possessed that marijuana prior to you pulling the vehicle over?

A.   No, sir.

Q.   And the only thing you observed was the marijuana on the ground on the side of the vehicle?

A.   Yes, sir.

Q.   Now you said you had the opportunity to observe Trooper Courville conducting the search of the vehicle?

A.   That is correct.

Q.   Do you recall where Trooper Courville started the search?

A.   No, sir, I don't recall.

Q.   Do you recall if you observed Trooper Courville locate anything in the vehicle?

A.   Yes, sir.

Q.   What part of the vehicle are we talking about?

A.   Where the glove box area is.  Dashboard.

The supreme court has explained:

This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." *State v. Brewington*, 601 So.2d 656, 657 (La.1992). This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances." *State v. Molinario*, 383 So.2d 345, 350 (La.1980)[, *cert. denied*, 449 U.S. 882, 101 S.Ct. 232 (1980)].  We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a

14

bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *State v. Haarala*, 398 So.2d 1093, 109[7] (La.1981) (emphasis added); *see also* 1 *McCormick on Evidence*, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted). The *res geaste* [sic] or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief v. United States*, 519 U.S. 172, 18[7], 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Id.*

*State v. Colomb*, 98-2813, pp. 3-4 (La. 10/1/99), 747 So.2d 1074, 1075-76.

Pursuant to *Colomb*, the evidence at issue in the present case would also qualify as integral-act evidence that simply provided the jury with a complete scenario regarding Major's arrest. However, while *Colomb* left open the question of whether integral-act evidence is subject to the balancing test of La.Code Evid. art. 403, this court has held that it is. *State v. Joseph*, 02-1370 (La.App. 3 Cir. 4/17/03), 854 So.2d 914. The evidence at issue had sufficient probative value to outweigh any potential prejudicial impact. The presence of the marijuana, accompanied by Major's explanation for the odor of marijuana in the car, indicated that he was aware of drug activity in the car, and was not a totally innocent party. On the other hand, his explanation of the situation may also be seen as potentially dulling the prejudicial effect, as his denial of drug use was put before the jury.

The *Colomb* court explained:

In this case, evidence of the defendant's marijuana possession contemporaneous with the police discovery of the firearm in his truck provided not only narrative completeness to a case which began as a narcotics stop but also formed an integral part of the context facts in which jurors evaluated the state's case for defendant's exercise of

15

dominion and control over the weapon found under the passenger seat of the van. The state presented additional opinion testimony from the police that defendant had paraphernalia associated with drug trafficking and that guns and drugs go "hand in hand." Jurors need not have credited any of that testimony, however, to conclude for themselves that the officers' disputed testimony about defendant's spontaneous admission he possessed his wife's gun for his own protection appeared fully consistent with the undisputed circumstances of the case that the police had stopped the defendant in a high crime area in Opelousas in possession of his own drug "stash."

Given the probative value of these context facts, we need not decide here whether integral act evidence presented under the authority of La.C.E. art. 404(B) must invariably pass the balancing test of La.C.E. art. 403.

*Id.* at 1076.

In the context of the State's case, the evidence of the presence of marijuana in the car had a probative value similar to that in *Colomb*. For the reasons discussed, the assignment lacks merit.

CONCLUSION

Major's conviction is affirmed. However, the sentence is vacated for failure to impose the mandatory fine. The case is remanded for resentencing. The trial court is instructed that, if it finds that Major is indigent, it is to impose the mandatory fine without default time.

CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED WITH INSTRUCTIONS.

16