STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-688

STATE OF LOUISIANA

VERSUS

RENDRICK R. DUKE


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C16430-1
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion , Judges.


Cooks, J., dissents and assigns written reasons.


**CONVICTION AND SENTENCE AFFIRMED.**


**Van Hardin Kyzar**
**District Attorney, 10th Judicial District Court**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**Counsel for Appellee:**
**State of Louisiana**

**Lala Brittain Sylvester**
**Brittain & Sylvester**
**P. O. Box 2059**
**Natchitoches, LA 71458**
**(318) 352-9588**
**Counsel for Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**Rendrick R. Duke**

**GREMILLION, Judge.**

On September 3, 2009, Defendant, Rendrick R. Duke, sold crack cocaine to an undercover agent. Consequently, he was charged by bill of information in count one with distribution of a controlled dangerous substance (CDS), schedule II (crack cocaine), a violation of La.R.S. 40:967; in count two with manufacture of a CDS, schedule II (crack cocaine), a violation of La.R.S. 40:967; in count three with possession of a CDS, schedule II (crack cocaine), a violation of La.R.S. 40:967; in count four with possession of a firearm in the presence of a CDS, a violation of La.R.S. 14:95(E); in count five with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1; in count six with simple possession of marijuana, first offense, a violation of La.R.S. 40:966; and in count seven with possession of drug paraphernalia, a violation of La.R.S. 40:1033.

A jury trial was held on November 8, 2010, on count one, distribution of a schedule II CDS, and Defendant was found guilty.[1] Defendant was sentenced on December 22, 2010, to serve eight years at hard labor, two years without benefit of probation, parole, or suspension of sentence. Defendant was also ordered to pay a $1,000 fine, $500 to the public defender, and $150 to the crime lab. In default of payment, the trial court imposed an additional six months imprisonment. A motion to reconsider sentence was not filed.

Defendant is now before this court on appeal to assert a single error. He argues that the evidence was insufficient to convict him of distribution of a CDS, schedule II (cocaine).

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by staff for errors patent on the face of the record. We find two.

---

[1]With regard to the remaining charges, Defendant pled guilty on July 7, 2011, to count two, manufacture of a CDS, schedule II (crack cocaine), and the remaining charges in counts three through seven were dismissed as part of the plea agreement.

At the sentencing hearing, the trial court imposed the following sentence:

[Y]ou are sentenced to eight (8) years with the Louisiana Department of Corrections, two (2) years of which shall be served without benefit of probation, parole or suspension of sentence. . . You're further sentenced to pay to the Sheriff of Natchitoches Parish a fine of one thousand dollars ($1000) plus cost, five hundred ($500) for the public defender, and one hundred fifty dollars ($150.00) for the crime lab, in default of which serve an additional six (6) months in jail.

In *State v. Moore*, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, 563, *writ denied*, 94-1455 (La. 3/30/95), 651 So.2d 858, this court stated: "An illegal sentence is one not 'authorized or directed by law.' *State v. Johnson*, 220 La. 64, 55 So.2d 782 (1951)."

In *State v. Frith,* 561 So.2d 879 (La.App. 2 Cir.), *writ denied*, 571 So.2d 625 (La.1990), the defendant was convicted of simple burglary. He was sentenced to two years at hard labor and ordered to pay a fine in the amount of five hundred dollars, to pay one-hundred sixty-two dollars and fifty cents in restitution to the victim, three hundred dollars to the Indigent Defender Board, and all court costs. On appeal, on error patent review, the court held, in pertinent part:

Second, LSA-C.Cr.P. articles 895 and 895.1 authorize restitution and payment to the indigent defender program as a condition of probation only when the trial court suspends the imposition or execution of sentence. *State v. Fluitt*, 482 So.2d 906 (La.App.2d Cir.1986); *State v. Starks*, 471 So.2d 1029 (La.App.1st Cir.1985). In this case, the trial court did not suspend the two year hard labor sentence. For this reason, the portion of the sentence ordering restitution and payment to the indigent defender program is illegal. Therefore, we further correct the sentence to delete that portion ordering restitution and payment to the indigent defender program. C.Cr.P. art. 882.

*Id*. at 883. *Cf. State v. Rideau*, 05-1470 (La. App. 3 Cir. 11/2/06), 943 So.2d 559, *writ denied*, 06-2805 (La. 9/14/07), 963 So.2d 395.

Louisiana Code of Criminal Procedure Article 895.1 provides, in pertinent part:

B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its

2

discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:

(1) To the indigent defender program for that court.

. . . .

(3) To the sheriff and clerk of court for costs incurred.

(4) To a law enforcement agency for the reasonable costs incurred in arresting the defendant, in felony cases involving the distribution of or intent to distribute controlled dangerous substances.

In this case, the trial court did not suspend imposition or execution of Defendant's sentence nor place him on probation. The trial court therefore lacked authority to order, as part of the principal sentence, that Defendant make payments to the sheriff's office, the indigent defender's board, and the crime lab. Accordingly, we amend Defendant's sentence, deleting the provisions regarding the payments to the sheriff's office, the indigent defender's board, and the crime lab. The trial court is, hereby, instructed to note the amendment in the court minutes.

Additionally, the trial court erred in ordering, in the event of default of payment, Defendant to serve an additional six months in jail. In *State v. Major,* 03-249, p.2 (La.App. 3 Cir. 3/2/05), 898 So.2d 548, 550-51 *writ denied*, 05-1716 (La. 2/10/06), 924 So.2d 161, this court explained in pertinent part[2]:

It is well-settled that "[a]n indigent person may not be incarcerated because he is unable to pay a fine which is part of his sentence. *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)." *State v. Zabaleta*, 96-2449, p. 1 (La.3/7/97), 689 So.2d 1369. The need for incarceration raises an issue when fines or costs are not paid, because La.Code Crim.P. art. 884 requires that, when a trial court imposes a fine or costs, it must also impose a specified term of imprisonment in the event the defendant defaults on payment of the fine or costs. Because an indigent person may not be incarcerated for failure to pay a fine, the supreme court has vacated "the portion of . . . [a] sentence which provides for a jail term in the event of default of payment of a fine . . . ." *Zabaleta*, 689 So.2d 1369.

---

[2]In the Southern Reporter, it appears West mistakenly put the prior report as 857 So.2d 1252 which was reversed by the supreme court and remanded to this court in 888 So.2d 798.

It appears Defendant is indigent. During the pre-trial, trial, and sentencing proceedings, he was represented by an appointed attorney, and on appeal, he is represented by the Louisiana Appellate Project. This court finds these facts are presumptive evidence of indigence. *See State v. Devare*, 03-610 (La.App. 5 Cir. 10/28/03), 860 So.2d 191 and *State v. Jones,* 535 So.2d 3 (La.App. 4 Cir. 1988). We recognize that this court's action of deleting the payments discussed above, renders this part of Defendant's sentence moot. Nevertheless, for the sake of clarity we also delete that portion of the sentence, and hereby, instruct the trial court to note the amendment in the court minutes.

## ASSIGNMENT OF ERROR

In his sole assignment, Defendant argues that the evidence is insufficient to convict him of distribution of a CDS, schedule II (cocaine). Defendant maintains that the jury heard no admissible evidence regarding the offense committed on March 4, 2010, thus, his conviction and sentence should be vacated.

The analysis for a claim of insufficient evidence is well-settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

To prove Defendant's guilt of distribution of a CDS, schedule II (cocaine), the State had to show that he produced, manufactured, distributed, or dispensed or

possessed with the intent to produce, manufacture, distribute, or dispense the cocaine. La.R.S. 40:967(A)(1). The elements of the crime, however, are not in dispute.

First, Defendant asserts that the date of the offense, as stated in the bill of information and read aloud to the jury, reflects that the offense occurred on May 4, 2010, whereas the evidence presented at trial related to an offense that occurred on September 3, 2009. Defendant also complains that the jury was permitted to hear evidence of another offense that occurred on March 4, 2010, a separate offense not before the jury.

**Bill of Information**

Count one of the bill of information, which was read aloud to the jury, indicates that on or about March 4, 2010, Defendant was charged with distribution of a CDS, schedule II (crack cocaine), the offense for which he was subsequently tried and convicted herein. Defendant did not object to the bill of information.

The evidence presented at trial involved a charge of distribution of a CDS, schedule II (cocaine), that occurred on September 3, 2009, not March 4, 2010, as provided in the bill of information. Officer Billy Joseph Meziere of the Natchitoches City Police Department testified about his investigation involving the Defendant's arrest on September 3, 2009, and subsequent charge for distribution of a CDS, mainly crack cocaine. Next, Lieutenant Roger Henson with the Natchitoches Parish Sheriff's Office testified about his involvement with Defendant's arrest and charge for distribution of crack cocaine on September 3, 2009. Lastly, Julian Williams, an undercover agent with the Beauregard Sheriff's Department, testified that Defendant sold him crack cocaine on September 3, 2009.

The supreme court in *State v. Draughn*, 05-1825, pp. 5-6 (La. 1/17/07), 950 So.2d 583, 623, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007) stated:

5

The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. *State v. Gainey*, 376 So.2d 1240, 1243 (La.1979). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. *State v. Williams*, 480 So.2d 721, 722, n. 1 (La.1985); La.C.Cr.P. art. 465, Official Revision Comment (a). Given counsel's failure to file a motion to quash, the defendant arguably waived any claim based on the allegedly defective indictment.

Notwithstanding the procedural bar to the claim, the Louisiana Constitution of 1974 provides that an accused shall be informed of the nature and cause of the accusation against him. La. Const. Art. I, § 13. That requirement is implemented by La.C.Cr.P. art. 464, which provides:

> The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Additionally, La.Code Crim.P. art. 468 reads in pertinent part:

> The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
>
> If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.

In the instant case, Defendant did not file a motion to quash the bill of information. Further, the date of the offense is not an essential element of the offense in proving that Defendant distributed cocaine. As such, the error is one of form, which may be amended at any time. *State v. Lawson*, 393 So.2d 1260 (La.1981).

On appeal, Defendant maintains that the date of the offense is essential because he was charged with two separate offenses that occurred months apart. As

6

such, he contends that the jury could not distinguish what charge Defendant was facing without a correct date on the bill of information.

The testimony of Lieutenant Henson indicates that on March 4, 2010, Defendant was arrested and charged with the offenses listed in counts two through seven of the bill of information, none of which are for distribution of a CDS, schedule II (crack cocaine). Also, at the time of Defendant's arrest, Lieutenant Henson learned that Defendant had an outstanding warrant for distribution of a CDS, schedule II (crack cocaine) that occurred on September 3, 2009, the offense for which he was charged in count one and was being tried. Lastly, Lieutenant Henson confirmed that Defendant's charges from March 4, 2010, were still pending at the time of trial. As such, Defendant's assertion that the date of the offense is essential because the jury could not distinguish what charge Defendant was facing without a correct date on the bill of information is without merit.

Additionally, the bill of information was read aloud at the beginning of trial, giving notice of the essential elements of the offense the State intended to prove. Defendant did not object to the sufficiency of the bill. The record also reflects that prior to trial, on June 28, 2010, counsel for Defendant acknowledged receipt of a copy of the discovery material in connection with the offense that occurred on September 3, 2009. Also, the minutes of a preliminary hearing on October 20, 2010, indicate that the parties discussed the fact that Defendant was involved in two separate transactions on separate dates, and the subsequent testimony involved the offense that occurred on September 3, 2009. Moreover, Defendant does not contend on appeal that he was either surprised or prejudiced by the error.

Accordingly, in addition to his failure to file a motion to quash, we note Defendant's post-verdict attack on the sufficiency of the bill of information fails to show he was not given fair notice of the offense charged or that the bill did not set forth an identifiable offense. There is no merit in Defendant's argument with

7

regard to the date of the offense as set forth in the bill of information and recited at trial.

**Other Crimes**

Defendant alleges that "the trial court and the State allowed the jury to be aware of prohibited other crimes evidence." Further, Defendant contends that the jury was flooded with other crimes evidence as the result of the wrong date on the bill of information.

The record reflects that on cross-examination, Defendant presented Lieutenant Henson with a document that he identified as his initial report form involving the instant offense on September 3, 2009. Defendant then asked:

> Q. Okay, and you see there where it indicates that . . . this was from the alleged purchase on September 3rd. Do you see where it lists the white Caprice and a license plate?
>
> A. Uh, yes sir.
>
> Q. Okay.
>
> A. Would you like for me to read that . . .
>
> Q. Yes, would you . . .
>
> A. . . . statement?
>
> Q. Yes.
>
> A. Uh . . . 'Upon the arrival, Agent Williams observed a white Chevrolet Caprice, uh, observed . . . bearing, Louisiana, SNG850, pulling into the lot occupied by two black males.'

The document was not introduced into evidence. Next, Lieutenant Henson was shown an application for a search warrant involving an offense on March 4, 2010, and was questioned as follows:

> Q. Okay. And I would like for you to read . . . this is again your affidavit beginning with the word, this . . . read that sentence for the jury . . . for the Court, please?
>
> A. This vehicle . . . this is in relation to the application of the search warrant that we spoke earlier . . .

Q.    For . . . for March . . .

A.    March 4th.

Q.    . . . March 4, 2010?

A.    Right.  In relation to the search warrant.  This vehicle is similar to the vehicle that Peter Richards had been observed driving, bearing Louisiana SNG850.

Q.    This was the same license plate number?

A.    It was in that particular instance, yes . . . the one that was parked three houses down.

Q.    But your . . . but your statement, here says it was similar to the car . . .

A.    Uh, huh.

Q.    . . . Peter Richards had been observed driving bearing Louisiana license plate, SNG850.

. . . .

Q.    So, there's the same license plate . . . the same automobile?

A.    No.

Q.    No.

A.    The way I referred that to be . . . was similar vehicle . . . I put the license plate that was actually parked three houses down on the affidavit, because it was on the vehicle . . . so I put it on my affidavit. So, in the event that we needed to search that vehicle, it would be on the application for the search warrant.

Q.    So, it wasn't . . . it wasn't the car that you saw Peter Richards driving?

A.    It's . . .

Q.    Or do you know for sure?

A.    It's similar . . . to the vehicle.  I can't say for sure . . .

Q.    Okay.

A.    . . . but it's similar.

The March 4, 2010 application for a search warrant was introduced and admitted into evidence without objection

9

In the application, Lieutenant Henson requested a search warrant be issued for the search of a residence occupied by Defendant and Donterrius Beaudion for the following reasons:

On the early morning of March 4 2010, Natchitoches SWAT executed a Narcotics warrant at a residence located at 618 Sabine Alley. This residence has been occupied by Peter Richards, aka "P.J." and Tareanesha Lagloria Johnson aka "Reanesha", who also have active distribution warrants for their arrest.

Upon entry to this residence SWAT members came in contact with a young child in the first bedroom, alone. An infant was located in a car seat on the master bedroom bed along with an elderly black male, identified as Emmett Roy Davis Jr., with just a shirt over his body. These children being the daughters of Tareanesha Johnson. A suspected crack pipe and other items of paraphernalia were located on the bed along with several rocks of suspected crack cocaine were recovered from the master bedroom.

After speaking with Davis, he stated that he lives there and was babysitting, but did not know the name of the children's mother. The Office of Children's Services were [sic] then called to the scene.

SWAT members also observed a white Chevrolet Caprice located at an abandoned residence two houses down. This vehicle is similar to the vehicle that Peter Richards had been observed driving, bearing Louisiana SNG850. As the plate was being called in to the Natchitoches Police Department, I observed a light on at the residence of 610 Winnona Street that is immediately next door to the 618 Sabine Alley residence. As I was walking up to the residence to knock on the door in an attempt to make contact with Tarneasha Johnson or another family member to take care of the children, Cpl. Linebaugh called me. He stated that he just received information from Emmett Davis, who stated that normally Peter Richards lives at the 618 Sabine Alley residence, but if the white Caprice is at the abandoned house, he might be there.

At that time Cpl. Linebaugh, Officer Derrick Roque and I went to the front door of 610 Winnona Street. I knocked on the front door and seconds later a black male, identified as Donterrious Beaudion, whom I remembered from a search warrant conducted within the past month or so, pulled the curtain back. I stated "SWAT, would open the door". He said some curse words and took off running. At that time entry was made into the residence, in fear that Richards may be in the residence and attempting to destroy any evidence. Once the door was breached, Cpl. Linebaugh entered the front room. As I entered behind him, someone slammed the door shut. I then breached the door again and took the subject holding it to the ground, who was identified as Renrick Duke. Duke also has two active warrants for distribution of crack cocaine and is currently on parole. As the residence was cleared

10

for any other occupants, suspected marijuana was observed in plain view in the master bedroom.

Once this was done both individuals were asked who lives there and both said they didn't know. As Duke was searched his wallet was located that had a large amount of US Currency within it. Upon asking him how much it was, he stated that it was about 30 $20 dollar bills. A short time later, as Duke was being escorted out of the residence, he stated that he wanted his money out of a shoebox in the bedroom. I asked him how much was in the box and he said about $1000.00, but continued to say that he did not live there.

Duke was then transported to the Task Force Office for booking he stated that the money in his wallet was his personal money. When asked about the shoe box, he again stated that the money in his wallet was his personal money.

For the above reasons I feel a search warrant should be issued to [sic] the purpose of located [sic] any items pertinent to this ongoing investigation.

On re-direct examination by the State, Lieutenant Henson clarified that he did not "run" the license plate number in the application for a search warrant involving the March 4, 2010 offense. Also, the vehicle described in the application was similar to the one belonging to Defendant.

Lieutenant Henson was not released by the State at that time and was recalled later at trial by the State. When asked if he remembered the circumstances surrounding the search warrant on March 4, 2010, Lieutenant Henson testified:

A.   On the morning of March 4, 2010, we were investigating an unrelated case in which we had a separate search warrant for the residence of the illegal drug activity. And we also had some undercover operations done out of that residence as well. As a result of that search warrant we found two children in there that the parents were not there. Also one of the targets or suspects that we were actually initially looking for was not there as well. Shortly thereafter the search warrant was executed. I personally had gone to a few residences to see if we could actually find the parents of the children, so that we could try to get them somewhere safely that we knew someone would take care of them. I walked a couple of houses down and I noticed . . .

Defendant objected on the basis that Lieutenant Henson's testimony was not within the scope of Defendant's cross-examination concerning the car described in the warrant application. The State responded that the questioning was leading up to

the description of the car. The trial court overruled Defendant's objection, stating that Defendant opened the door by filing the document into evidence and that the State would be discussing the car as well. Lieutenant Henson continued:

> A.     Okay. As a result of that, I went to a couple of houses down, and I saw a light on inside of a residence. As I begin walking up to the residence to knock on the door. Another agent . . . SWAT Agent came up to me and advised me that he received information that the possible suspect that we were initially looking for may be in that residence. So we did continue to go to the residence and I knocked on the door. At that time an individual that I knew pulled a curtain back from the door. He saw us. I announced who we were. And he began to flee from the doorway, cursing and what not. At that time entry was gained into that residence. Uh, due to the fact that they may be trying to destroy evidence, if the actual suspect is inside the residence and trying to destroy anything that might be there for the ongoing investigation. As we entered the residence, we came in contact with two subjects, one being Mr. Duke. And his vehicle, a white Caprice that we spoke earlier bearing SNG850 was parked just adjacent to the residence that he was located in. During that incident, crack cocaine was found inside the residence, a weapon was found in the residence, a large sum of . . . US currency was located, uh, marijuana was also located inside the residence. And there was evidence that indicated that they were actually manufacturing crack cocaine from powder cocaine inside that residence. As a result, Mr. Duke as well as the other individual were taken into custody and charged with possession of intent . . . manufacturing, possession with intent . . . marijuana, possession of a firearm by a convicted felon, as well as possession of a firearm in the presence CDS.

Lieutenant Henson also testified that at the time of Defendant's arrest on March 4, 2010, he had an outstanding warrant for the distribution of a CDS, schedule II (crack cocaine) that occurred on September 3, 2009. Lastly, Lieutenant Henson confirmed that Defendant's charges from March 4, 2010, were still pending at the time of trial.

Lastly, Rachel Plaisance with the North Louisiana Crime Lab testified that the evidence seized on September 3, 2009, from a transaction in which Defendant was involved, was determined to contain cocaine.

At the conclusion of evidence and prior to the jury's deliberation, Defendant renewed his request that the testimony regarding the March 4, 2010 offense be stricken from the record and the jury be asked to disregard anything concerning

12

pending criminal charges. The State responded that Defendant introduced the application for the warrant into evidence and questioned Lieutenant Henson about the application, opening the door to questions surrounding the vehicle which belonged to Defendant who was staying at the residence.

The trial court agreed that Defendant had opened the door by introducing the application for the warrant, thinking the questioning was going to connect Defendant to the vehicle. The trial court, however, did not expect Lieutenant Henson to testify about another offense, and after hearing his testimony, the trial court found that the testimony had gone too far. A better way to have connected the vehicle to Defendant, the trial court stated, would have been "we knocked on the door of the residence where the vehicle was and the defendant was there, and said he resided there." The trial court then indicated that the jury would be instructed to disregard any other testimony. Defendant did not object to the trial court's ruling.

The trial court then discussed with the parties a draft of the jury instruction to be given to the jury before closing arguments. The instruction read:

> You will remember Lieutenant Henson testified a second time concerning the application for a search warrant on March 4, 2010. The only part of his testimony that you may consider is that the car described in the application was parked at a residence where the defendant was found, and at which the defendant stated he resided. You are to disregard any of Lieutenant Henson's other testimony on the second occasion he was called to the stand as to what happen at the residence he went to.

Defendant stated he had no objection to the instruction, and the jury received this instruction when it returned to the courtroom.

Considering the record herein, we find that Defendant opened the door to the introduction of other crimes evidence. Prior to Defendant's questioning of Lieutenant Henson and the introduction of the application for a warrant regarding the offense committed on March 4, 2010, the jury had not been presented with any

13

evidence of other crimes. Additionally, Lieutenant Henson's testimony divulged information about the offense on March 4, 2010, that was already admitted into evidence in the application for the warrant.

At the conclusion of evidence and prior to the jury's deliberation, the trial court determined that Lieutenant Henson's testimony should be limited, and without objection, the jury was instructed to consider only the testimony regarding the description of the car parked at the residence where Defendant resided and was found. The jury was also instructed to disregard Lieutenant Henson's testimony about what happened at the residence. There is merit in Defendant's allegation that "the trial court and the State allowed the jury to be aware of prohibited other crimes evidence." However, we find the trial court took the proper corrective steps—steps to which Defendant did not object.

## DECREE

Defendant's conviction and sentence are affirmed. We amend Defendant's sentence, deleting the payments to the sheriff's office, the indigent defender's board and the crime lab. Additionally, the contingency of six months in the parish jail in the event of the default of payments is also deleted. The trial court is instructed to note the amendments in the court minutes.

**CONVICTION AND SENTENCE AFFIRMED.**

STATE OF LOUISIANA

VERSUS

RENDRICK R. DUKE

**Cooks, Judge Dissenting.**

This is a case of first impression. This is not a case of any typographical error or mistake in the date alleged in the indictment. It is a mistake in the State's presentation of the wrong case. The bill of information read to the jury was based upon events allegedly occurring on March 4, 2010. The only evidence presented related solely to events occurring on September 3, 2009. There were two outstanding bills of information charging Defendant with two separate offenses which allegedly occurred on September 3, 2009 and on March 4, 2010. All of the evidence presented at trial related only to the 2009 bill of information, not the 2010 bill of information presently before the jury. The state simply came to trial and put forth evidence of the wrong charged offense. This is not a circumstance where the date is uncertain or hard to ascertain such as in child molestation cases. Defendant had no opportunity to defend himself or fairly prepare for trial when he believed the case upon which he was being tried was for an event that allegedly occurred on March 4, 2010, as alleged in the indictment read to the jury, only to find at trial that the evidence introduced concerned only events on September 3, 2009. These events were the subject of an outstanding bill of information which was not called for trial that day.

This conviction violates Defendant's constitutional right to due process and a fair trial under both the Louisiana and United States Constitutions. See U.S. Const., Amend. V; La. Const. Art. I, Sect. 13; La.Const. Art. I, Sect. 15; and La.

Const. Art. I, Sect. 16. The jurisprudence has long held that an accused is entitled to a fair trial and that such is a fundamental, basic requirement of constitutional due process. As the Louisiana state supreme court reiterated in *State v. Cooper*, 2010-2344 (La.11/16/10), 50 So. 3d 115,131 "due process of law requires fundamental fairness, i.e., a fair trial in a fair tribunal." *See* also *Turner v. State of Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed. 2d 424 (1965) and *State v. Mejia*, 250 La. 518, 197 So.2d 72 ( La. 1967). It is "the law of the land that no man's life, liberty or property be forfeited as a punishment until there has been a charge fairly made and fairly tried in a public tribunal." *Chambers v. Florida*, 309 U.S. 227, 236, 237, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940). It is fundamentally unfair to bring a defendant to trial based on events that are alleged to have occurred on March 4, 2010; proceed to introduce at that trial evidence of an offense the state alleges, in a separate and outstanding bill of information, occurred on September 3, 2009; and convict Defendant of the 2010 violation based only upon evidence of activities occurring on September 3, 2009. The State put forth the wrong case at this trial and the conviction based on evidence of criminal activity on another date germaine only to events addressed in another bill of information is not valid. This conviction offends all notions of constitutional due process of law and the right to a fair trial. The bill of information read to the jury and for which Defendant had appeared for trial did not inform Defendant of the *"nature and cause of the accusation against him in sufficient detail to allow him to prepare for trial, as well as to allow the court to determine the admissibility of the evidence." State v. Marcal*, 388 So.2d 656 (La. 1980). I believe this conviction is constitutionally infirm and cannot stand. Defendant's conviction should be reversed, vacated and a judgment of acquittal should be entered. The constitutional prohibition against double jeopardy prohibits the State from re-trying Defendant on the March 4, 2010 charge.